IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:09-HC-2028-BO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Petitioner, ) | |
| ) | |
| v. ) | FINDINGS OF FACT |
| ) | AND CONCLUSIONS OF LAW |
| GEORGE HAMELIN, ) | |
| Respondent. ) | |

Petitioner (the government) instituted this civil action pursuant to Title 18 of the United States Code, Section 4248(a), seeking to commit Respondent George Hamelin (Respondent or Mr. Hamelin) as a "sexually dangerous person" pursuant to the Adam Walsh Child Protection and Safety Act of 2006 ("the Act"). The government filed a certificate stating that mental health personnel for the Federal Bureau of Prisons (BOP) examined Respondent and issued a preliminary determination that he is sexually dangerous within the meaning of the Act [DE 1]. Such certificate stayed Respondent's release from federal custody pending a hearing to determine whether Respondent qualifies for commitment as a sexually dangerous person. The Government's petition was filed on February 27, 2009, one day before Respondent was scheduled to be released from BOP custody on February 28, 2009.

On December 15, 2011, the Court conducted an evidentiary hearing in this matter pursuant to 18 U.S.C. § 4247(d). On December 15, 2011, the Court directed the parties to file proposed findings of fact and conclusions of law. Pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure, and after due consideration of the evidence presented and argument of

counsel, the Court *adopts* the following portions of Respondent's Findings of Fact and Conclusions of Law (Findings), as filed on January 10, 2012 [DE 61], and incorporates those portions as if they were fully set forth herein: sections II (Facts), III (Expert's Qualifications), V (Findings), VI (Dangerousness and Risk Assessment). The Court declines to adopt Respondent's proposed conclusions regarding violations of equal protection and due process as set forth in section VII insofar as they are inconsistent with the Fourth Circuit's recent holding in *United States v. Timms*, 664 F.3d 436 (4th Cir. 2012). The Court now holds that the government has failed to satisfy its burden to show by clear and convincing evidence that Respondent is sexually dangerous to others as defined by the Adam Walsh Act.

## DISCUSSION

To order the commitment of a respondent pursuant to § 4248, a court must conclude, after an evidentiary hearing at which the government bears the burden of proof by clear and convincing evidence, that the respondent is a "sexually dangerous person" as defined by the Act. The government must show that (1) the respondent "has engaged in or attempted to engage in sexually violent conduct or child molestation" and (2) that the respondent "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." 18 U.S.C. § 4248(d). "[C]lear and convincing has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, and, as well, as evidence that proves the facts at issue to be highly probable." *Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439, 450 (4th Cir. 2001) (internal quotation marks, citations, and alterations omitted); *see also Addington v. Texas*, 441 U.S. 418,

2

423-24 (1979) (noting that the "clear and convincing" standard of proof is an "intermediate standard" that falls between a "mere preponderance of the evidence" and "beyond a reasonable doubt"). If the court finds that the government has satisfied its burden, the individual must be committed to a suitable facility for mental treatment until he is determined to no longer be sexually dangerous to others. 18 U.S.C. § 4248(d).

**1. *Whether Respondent has engaged or attempted to engage in sexually violent conduct or child molestation***

The Court finds that the government has established by clear and convincing evidence that Mr. Hamelin has engaged or attempted to engage in sexually violent conduct or child molestation in the past. Mr. Hamelin does not contest such a finding.

**2. *Whether Respondent currently suffers from a serious mental illness, abnormality, or disorder***

None of the experts who testified in this matter could agree as to a precise diagnosis of Mr. Hamelin. Dr. Hy Malinek, one of the government's experts, opined that Mr. Hamelin currently suffers from paraphilia not otherwise specified ("NOS") and pedophilia. Pet'r Ex. 9. Dr. Malinek in his report discussed Mr. Hamelin as suffering from both hebephilia and pedophilia. Dr. Heather Ross, the government's second expert, opined that Mr. Hamelin currently suffers from paraphilia NOS and personality disorder NOS, with antisocial features. Pet'r Ex. 11. Respondent's expert, Dr. Joseph Plaud, opined that Mr. Hamelin does not currently suffer from a sexual disorder. Resp't Ex. 1.

*Pedophilia, Paraphilia NOS, & Hebephilia*

According to the American Psychiatric Association's *Diagnostic and Statistical Manual*

3

*of Mental Disorders, Fourth Edition, Text Revision* ("DSM-IV-TR"), pedophilia involves recurrent, intense, sexual urges, fantasies, or behaviors involving pre-pubescent minors, generally age thirteen or younger. DSM-IV-TR at 570-71. Pubescence is defined as the approach of the age of puberty or sexual maturity. STEDMAN'S MEDICAL DICTIONARY (28th ed. 2006). Puberty is defined as the sequence of events by which a child becomes a young adult, including the development of secondary sexual characteristics. *Id.* The DSM-IV-TR lists pedophilia within the diagnostic class of sexual disorders or paraphilias.

Dr. Malinek bases his diagnosis of pedophilia in this case on the existence of one victim aged thirteen and at least one victim under the age of thirteen. Pet'r Ex. 9 at 13. Dr. Ross testified, however, that in her opinion the record did not support a diagnosis of pedophilia in this case, as the record does not sufficiently reveal Respondent as having recurrent, intense sexual urges, fantasies, or behaviors involving pre-pubescent minors. Dr. Plaud concurred in his report, stating that "Mr. Hamelin is not a pedophile." Resp't Ex. 1 at 10. The Court is persuaded by the findings of Drs. Ross and Plaud and finds that the government has failed to show by clear and convincing evidence that Mr. Hamelin suffers from pedophilia.

The DSM-IV-TR also provides for a diagnosis of paraphilia, not otherwise specified, or paraphilia NOS. Paraphilia NOS has been described as a "catch-all" diagnostic category, provided to be applied to paraphilias that do not meet the criteria for any specified categories, such as less frequently observed paraphilias, including telephone scatalogia, necrophilia, and zoophilia. Resp't Ex. 1 at 9; DSM-IV-TR at 567, 576. The DSM-IV-TR entry for paraphilia NOS contains none of its own diagnostic criteria.

Hebephilia involves sexual attraction to pubescent and post-pubescent minors. Resp't

Ex. 1 at 10. Hebephilia is not listed as an accepted mental disorder in the DSM-IV-TR. Although hebephilia has been proposed to be included as a mental disorder in the revision of the DSM, it has been rejected as a proper mental disorder by numerous psychologists.

Both Drs. Malinek and Ross diagnosed Mr. Hamelin with paraphilia NOS. Dr. Malinek expressly used the term hebephilia in his report, but Dr. Ross testified that she does not use the term hebephilia. Both diagnoses of paraphilia NOS in this matter are based, however, on the same behaviors of Mr. Hamelin – namely, Mr. Hamelin's sexual interest in pubescent and post-pubescent males.

As discussed in Respondent's Findings, noted mental health professionals have opined that sexual arousal to pubescent and post-pubescent minors is not an inherently deviant sexual interest, albeit one that, in this country, if acted on might violate the law. Resp't Findings at 6. The Court finds persuasive the testimony of Dr. Plaud on this issue, who states in his report that "a possible diagnosis of a deviant sexual interest in pubescent/post-pubescent males, termed by some psychologists as 'paraphilia NOS hebephilia/ephebophilia,'. . . is an invalid diagnosis." Resp't Ex. 1 at 10. Given that the characterization of hebephilia is a contested issue in the mental health community, the Court finds that it would be inappropriate to predicate civil commitment on a diagnosis that a large number of clinical psychologists believe is not a diagnosis at all, at least for forensic purposes.

Accordingly, the Court finds in this matter that a diagnosis of paraphilia NOS that is based on behaviors that might otherwise be described a hebephilic is not an appropriate basis for civil commitment under the Act, and that the government has therefore failed to meet its burden on this issue.

5

*Personality Disorder NOS*

A personality disorder is "an enduring pattern of inner experience and behavior that deviates markedly from the expectations of the individual's culture." DSM-IV-TR at 689. Dr. Ross' report indicates that her diagnosis of personality disorder not otherwise specified (NOS) with antisocial features qualifies as a serious mental illness, abnormality, or disorder. However, Dr. Ross' diagnosis of Mr. Hamelin as having personality disorder NOS was not the focus of her testimony at the evidentiary hearing, and thus the Court gives it less weight as it considers whether the government has met its burden at this step of the inquiry. While it need not decide today whether a diagnosis of personality disorder NOS, standing alone, would ever be a sufficiently serious mental illness, abnormality, or disorder upon which to predicate civil commitment under the Act,[1] in light of the paucity of testimony on this issue and the reports of the other experts who did not include a diagnosis of a personality disorder in this case, the Court finds that Dr. Ross' diagnosis of Mr. Hamelin as having paraphilia NOS with antisocial features, standing alone, is not a sufficiently serious mental illness, abnormality, or disorder to satisfy the second inquiry required under the Adam Walsh Act.

In light of its finding that the weight of the evidence does not support a diagnosis of pedophilia and that neither a diagnosis of hebephilia nor paraphilia NOS based on sexual attraction to pubescent and post-pubescent minors is an accepted mental disorder that constitutes an appropriate basis upon which to predicate civil commitment, the Court finds more credible the testimony of Dr. Plaud, who opined in this matter that Mr. Hamelin currently suffers from no

---

[1] *See* Jack Vognsen, PhD and Amy Phenix, PhD, *Antisocial Personality Disorder Is Not Enough: A Reply to Sreenivasan, Weinberger, and Garrick.* 32 J. AM. ACAD. PSYCHIATRY LAW 440 (2004).

sexual disorder.

Further, the Court finds that personality disorder NOS with antisocial features is not, standing alone as in this instance, a mental illness, abnormality, or disorder sufficiently serious to satisfy the government's burden on this issue. Accordingly, the Court finds that the government has failed to show by clear and convincing evidence that Mr. Hamelin currently suffers from a serious mental illness, abnormality, or disorder as required by the Act.

### *3. Whether, as a result of the illness, abnormality, or disorder, the Respondent would have serious difficulty in refraining from sexually violent conduct or child molestation if released*

Even if this Court were to credit the government's assertion that Mr. Hamelin suffers from paraphilia NOS, hebephilia, and such diagnosis could appropriately be considered a serious mental illness, the government has still failed to meet its burden to show that Mr. Hamelin would have serious difficulty in refraining from sexually violent conduct or child molestation if released. As noted by the Fourth Circuit in *United States v. Hall*,

> [t]he 'serious difficulty' prong of § 4248's certification proceeding refers to the degree of the person's "volitional impairment," which impacts the person's ability to refrain from acting upon his deviant sexual interests. *Kansas v. Hendricks*, 521 U.S. 346, 358 (1997) (noting that statutory requirements that couple proof of dangerousness with proof of a mental illness or abnormality "serve to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control"); *id.* at 357 (noting that civil commitment statutes may "provide[] for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety...provided the confinement takes place pursuant to proper procedures and evidentiary standards") (internal citations omitted); *see also Kansas v. Crane*, 534 U.S. 407, 414 (2002) (noting that "our cases suggest that civil commitment of dangerous sexual offenders will normally involve individuals who find it particularly difficult to control their behavior.")

*United States v. Hall*, 664 F.3d 456, 463 (4th Cir. 2012).

Each of the testifying experts relied, to a greater or lesser degree, on actuarial instruments.

7

These instruments include the Static 99-R, the Static 2002-R, the MnSOST-R, and MATS-1, and the Court adopts the Respondent's findings of fact as to the results of these actuarial assessments and the testimony regarding the application of these assessments by each expert. After considering the testimony and the reports of the experts in this case, the Court finds more credible the opinion of Dr. Plaud with regard to this step of the inquiry. Dr. Plaud relied heavily in his testimony on the age of Respondent, who at the time of the hearing was 64 years old, and noted in his report that "so few [men in their sixties, even those with histories of multiple sexual offenses, including offenses committed in their forties,] re-offend as to make the recidivism rate of this group of men approach zero statistically." Resp't Ex. 1 at 2. Mr. Hamelin has had no disciplinary infractions while in the custody of the BOP and maintains good work ratings from his work assignment. Resp't Ex. 6 - 8. Dr. Plaud also notes that Mr. Hamelin exhibits excellent impulse control and an ongoing ability to manage sexual impulses.

> [I]n cases where lack of control is at issue, the 'inability to control behavior' will not be demonstrable with mathematical precision. It is enough to say that there must be proof of serious difficulty in controlling behavior. And this, when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.

*Kansas v. Crane*, 534 U.S. 407, 413 (2002).

Furthermore, Mr. Hamelin will serve a three year term of supervised release upon his release from BOP custody, meaning he will be at least 67 years old when he is no longer supervised by the United States Probation Office. This final step of the inquiry, focused as it is on future behavior, must appropriately take into account the *current* status of the respondent. The Court finds persuasive the testimony of Dr. Plaud that, having considered Mr. Hamelin in

light of his *current* age and physical health, in addition to the lack of evidence of *current* sexual deviance or impulse control, he could only conclude that Mr. Hamelin would not have serious difficulty in refraining from sexually violent conduct or child molestation if released.

Accordingly, though it finds that the government has met its burden at step one, and even if it assumes, *arguendo*, that the government has met its burden at step two of the inquiry, the Court finds that the government has failed to show by clear and convincing evidence that Mr. Hamelin would have serious difficulty in refraining from sexually violent conduct or child molestation if released. The government has not met its burden, therefore, to show that Mr. Hamelin is sexually dangerous to others as defined by the Adam Walsh Act.

## CONCLUSION

Accordingly, the Clerk is DIRECTED to enter judgment in favor of the Respondent George Hamelin and against the Petitioner. The government is ORDERED to release the Respondent to the custody of the appropriate United States Probation Office. All other pending motions are DENIED AS MOOT and this action is hereby DISMISSED.

SO ORDERED, this 5 day of April, 2012.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE